IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANTON THURMAN MCALLLISTER,<br><br>Plaintiff,<br><br>v.<br><br>WELLPATH HEALTH CARE, et al.,<br><br>Defendant(s). | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:19CV1034 |

MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Anton Thurman McAllister, submitted a pro se Complaint (Docket Entry 2) and Amended Complaint (Docket Entry 3) under 42 U.S.C. § 1983 and requests permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § l915(a) (Docket Entry 1). Plaintiff names thirteen corporate, institutional, and individual Defendants based on claims associated with medical treatment he received while incarcerated at the Forsyth County Detention Center.

Because Plaintiff is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," this Court has an obligation to "review" this Complaint. 28 U.S.C. § 1915A(a). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if [it] – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

Applicable here, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1), when the complaint does not "contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

For the reasons that follow, the Complaint and Amended Complaint should be dismissed as to most of the named Defendants pursuant to 28 U.S.C. § 1915A(b) because they fail to state a claim on which relief may be granted, while claims against a few of the other Defendants should be allowed to proceed.

---

[1]Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

## Basic Factual Allegations

The first claim listed in the Complaint is one for medical malpractice. (Docket Entry 2 at 18.)[2] The Complaint alleges that Plaintiff received a prescription for Zyprexa, which it describes as a "mental health medicine" for treating bipolar and schizophrenia. (Id.) It adds that Plaintiff has no diagnosis of either condition. (Id.) However, he received Zyprexa from December 5, 2018 until mid-January of 2019 while incarcerated at the Forysth County Detention Center. (Id.) The Complaint alleges that the medicine raised Plaintiff's blood glucose levels to the point that it damaged his pancreas causing "extreme hunger, extreme thirst, frequent urination, unexplain[ed] weight loss, blurry vision, and fatigue[ ]." (Id.) Medical staff later diagnosed Plaintiff as having diabetes, which Plaintiff believes the Zyprexa caused. (Id.)

Plaintiff's second claim is one of deliberate indifference to his medical needs. (Id.) The Complaint alleges that Zyprexa is known to cause diabetes and high blood pressure, that medical staff knew that Plaintiff has a family history of diabetes, that they knew he had a high risk of developing diabetes if he took the drug, and that they prescribed it anyway without taking further precautions, resulting in his diabetes. (Id. at 18-19.) The Complaint further alleges that, from January to May of 2019, medical staff ignored the symptoms of Plaintiff's diabetes, instead taunting him for losing fifty pounds and responding to his requests for food by telling him that only pregnant women can receive more food. (Id. at

[2] All page citations to the Complaint and Amended Complaint refer to the page numbers listed in the footer displayed on the documents in this Court's electronic case filing database.

19.) The Complaint claims that medical staff at the Detention Center did not allow Plaintiff to speak directly to a doctor for over four months. (Id.) Additionally, it contends that, after Plaintiff began receiving insulin for his diabetes, he was often removed from the medication list because he sometimes "exercised his] right to refuse treatment at any time" and that he did not receive treatment even when his eyes became bloodshot and swollen. (Id. at 19-20.) Finally, the Complaint alleges that, at about the same time Plaintiff received a diagnosis of diabetes, medical staff also informed him that he had hepatitis C antibodies and probably the virus itself, but that he would not receive any treatment for the disease. (Id. at 20-21.) The Complaint asserts that Plaintiff requested information on his diseases and medications for four months, but that staff provided none. (Id.)

Plaintiff's third claim is titled "Unlawful professional Judgement Claim" and states that, between October of 2018 and August of 2019, Plaintiff sought mental health treatment from his personal healthcare provider, but was denied that treatment because security staff made what the Complaint describes as "medical judgments." (Id. at 21.) The Complaint states that the security staff told Plaintiff during administrative grievance procedures to work with medical staff at the Detention Center to meet his needs. (Id.) The Complaint adds that Plaintiff repeatedly sought information concerning Zyprexa and its possible side effects, only to be given very little of such information. (Id.) The Complaint adds that, when Plaintiff initiated grievance procedures, security staff told Plaintiff that all medications cause side effects and that he could not prove that Zyprexa caused his diabetes. (Id. at 21-22.) They

did not agree to his proposed grievance remedies and his efforts at grieving the issue resulted "in dead ends without a reasonable resolution." (Id. at 5.)

Although the Complaint initially makes only general allegations as to the above claims and does not include specific allegations against each named Defendant, it later adds separate allegations as to each Defendant. (See id. at 23-32.) The Amended Complaint does not add further claims, but does add three more Defendants with particular allegations as to each one. (Docket Entry 3 at 6-8.) The Court will use the above allegations to provide a general context for the specific allegations, but will discuss and evaluate the specific allegations against each Defendant to determine whether or not they state a claim for relief.

Defendant Wellpath Health Care

The first Defendant named in the Complaint is Wellpath Health Care, the medical services provider for the Forsyth County Detention Center. (Docket Entry 2 at 23.) The Complaint alleges that Defendant Wellpath enforced policies that caused medical staff not to provide treatment when Plaintiff's eyes became red and swollen, employed "inadequate and incompetent" staff, failed to pay proper attention to inmates' right to consent to treatment and thereby caused Plaintiff to receive Zyprexa and become a diabetic, lacked a policy preventing Plaintiff from harming himself by refusing treatment, and allowed medical staff to ignore sick calls and emergency requests. (Id.)

Plaintiff's first claim, that of medical malpractice, appears to be asserted against Defendant Wellpath given the allegations just set out. However, there is no claim for medical malpractice under § 1983. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Any

malpractice claim must sound in state law. Under North Carolina Rule of Civil Procedure 9(j), a complaint alleging medical malpractice must certify that the medical care in question was reviewed by a person reasonably expected to qualify (or whom the plaintiff will move to qualify) as an expert witness and who is willing to testify that the medical care received by the plaintiff did not comply with the applicable standard of care. See N.C. R. Civ. P. 9(j)(1), (2).

Of particular note:

> North Carolina Rule of Civil Procedure 9(j) "serves as a gatekeeper, enacted by the legislature, to prevent frivolous malpractice claims by requiring expert review before filing of the action." Moore v. Proper, 366 N.C. 25, 31, 726 S.E.2d 812, 817 (2012). Medical malpractice "complaints 'receive strict consideration by the trial judge,' and '[f]ailure to include the certification necessarily leads to dismissal.'" Id. (quoting Thigpen v. Ngo, 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002)). The Fourth Circuit recently recognized that Rule 9(j) certification constitutes a substantive requirement of North Carolina law applicable in federal court. See Littlepaige v. United States, No. 12–1367, 2013 WL 2501744, at *3 (4th Cir. June 12, 2013) (unpublished); see also Graves v. Andrews, No. 1:12CV154, 2013 WL 1010473, at *8 (M.D.N.C. Mar. 14, 2013) (unpublished) (Beaty, J.) ("'Failure to comply with Rule 9(j) is ground for dismissal of a state law medical malpractice claim filed in federal court.'" (quoting Davis v. Jones, No. 5:12CV143RJC, 2012 WL 4959497, at *4 (W.D.N.C. Oct. 16, 2012) (unpublished))); Boula v. United States, No. 1:11CV366, 2013 WL 1343547, at *2 (M.D.N.C. Apr. 2, 2013) (unpublished) (Webster, M.J.) (citing numerous decisions from federal district courts in North Carolina treating North Carolina Rule of Civil Procedure 9(j) as a substantive requirement of North Carolina law).
>
> "In determining whether or not Rule 9(j) certification is required, the North Carolina Supreme Court has held that 'pleadings have a binding effect as to the underlying theory of plaintiff's negligence claim.'" Sturgill v. Ashe Mem'l Hosp., Inc., 186 N.C. App. 624, 628, 652 S.E.2d 302, 305 (2007) (quoting Anderson v. Assimos, 356 N.C. 415, 417, 572 S.E.2d 101, 102 (2002)). North Carolina law defines a medical malpractice action as "[a] civil action for damages for personal injury or death arising out of the furnishing or failure to

> furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90–21.11(2)(a). Professional services "means an act or service ... involving specialized knowledge, labor, or skill." Horsley v. Halifax Reg'l Med. Ctr., Inc., [220] N.C. App. [411], [413], 725 S.E.2d 420, 421 (2012) (quoting Lewis v. Setty, 130 N.C. App. 606, 608, 503 S.E.2d 673, 674 (1998)).

Parker v. Burris, No. 1:13CV488, 2013 WL 5604622, at *2 (M.D.N.C. Oct. 11, 2013) (unpublished), rec. adopted, slip op. (M.D.N.C. Jan. 13, 2014).

Here, there is no doubt that Plaintiff seeks damages based on personal injury arising out of Defendant Wellpath's furnishing or failure to furnish professional medical services. He also denominates his claim as one for malpractice. Therefore, North Carolina law requires that he provide the necessary certification for the medical malpractice claim in the Complaint. Plaintiff provides no such certification and his medical malpractice claim should be dismissed as to not only Defendant Wellpath, but all other Defendants as well. The dismissal should be without prejudice to Plaintiff refiling with the proper certification. Id., at *4.

Plaintiff's second claim as to Wellpath is one for improper medical care under § 1983. In general, deliberate indifference to a serious medical need can state a claim under § 1983. Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). However, "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir.1999). Moreover, mere disagreement with treatment received is not enough to state a claim for relief. Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir.

2013) (citing Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir.1975)); United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011). Additionally,

> [t]he Fourth Circuit has conditioned liability for private corporations under 42 U.S.C. § 1983 on the same requirements established for municipal corporations. Rodriguez v. Smithfield Packing Co, Inc., 338 F.3d 348, 355 (4th Cir. 2003). Consistent with that view, a *respondeat superior* theory cannot support such liability as a matter of law. Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir.1999). Instead, to establish § 1983 liability for a private corporation, a plaintiff must show that "an official policy or custom of the corporation cause[d] the alleged deprivation of federal rights." Id.
>
> At the pleadings stage, a plaintiff must allege facts to plausibly support "a direct causal link between a [corporate] policy or custom and the alleged constitutional deprivation." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).

Parker, 2013 WL 5604622, at *4. As noted above, Plaintiff claims that Wellpath policies existed which led to violations of his rights. However, the Complaint fails to set out, name, or describe these policies, much less explain how they led to the alleged violations. Conclusory allegations of deficient policies or customs do not suffice to state a viable claim for relief. Revene v. Charles Cnty. Com'rs, 882 F.2d 870, 875 (4th Cir. 1989). Therefore, this claim should also be dismissed as to Defendant Wellpath.

Finally, Plaintiff's third claim for relief appears to pertain more to Detention Center security staff than medical personnel and/or Defendant Wellpath. However, to any extent that it does apply to Wellpath, it alleges only that security staff did not properly handle administrative grievances filed by Plaintiff. Plaintiff has no constitutional right to a proper grievance response, or even to any grievance procedure at all. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Therefore, this claim should also be dismissed.

Eli Lilly and Company

The next Defendant named in the Complaint is Eli Lilly and Company, the manufacturer of Zyprexa. (Docket Entry 2 at 24.) The Complaint alleges that Defendant Eli Lilly is aware that Zyprexa is dangerous, but markets it as safe for treatment of bipolar disorder and schizophrenia. (Id.) It concludes that Defendant Eli Lilly "assisted Wellpath in causing [Plaintiff] to develop diabetes." (Id.)

Plaintiff's allegations as to Defendant Eli Lilly do not raise any claim of a deprivation of his federal rights and are more akin to a product liability claim than a claim under § 1983. In any event, a plaintiff can only bring a claim against state actors under § 1983 and product manufacturers are not state actors merely because their products were distributed to prisoners. Smith v. Ozmint, C.A. No. 9:07-3644-PMD-BM, 2009 WL 629828, at *4 (D.S.C. Mar. 12, 2009), aff'd 356 F. App'x 646 (4th Cir. 2009); Perry v. Chattem, Inc., No. 7:08CV00106, 2008 WL 983428, at *4 (W.D. Va. Apr. 9, 2008) (citing cases). The Complaint alleges nothing more as to Defendant Eli Lilly and, therefore, fails to state any claim under § 1983.

Given the nature of the allegations in the Complaint, Plaintiff may intend to raise a state law claim against Defendant Eli Lilly based on its allegedly defective product or its marketing of that product. If so, such a claim would not share common questions of law and fact with the claims raised against other defendants and would, therefore, require severance. Further, if Plaintiff seeks to raise a state law claim he should bring those claims in the state courts unless he can establish federal jurisdiction based on diversity of citizenship. His claim

under § 1983 should be dismissed as to Defendant Eli Lilly and Company, while any other claims should be dismissed without prejudice to Plaintiff bringing those claims in an appropriate venue. Kelly v. Lewis, No. 12CV1385, 2014 WL 5308192, at *3 (M.D.N.C. Oct. 16, 2014), rec. adopted, slip op. (M.D.N.C. Nov. 20, 2015); In re: Zyprexa Prod. Liab. Litig., No. MDL 1596, 04-CV-1615, 2004 WL 2812095 (E.D.N.Y. Dec. 3, 2004).

Dr. Cummingham

The third Defendant named in the Complaint is Dr. Cummingham, a psychiatrist employed by Defendant Wellpath. (Docket Entry 2 at 25.) The Complaint claims that Defendant Cunningham did not inform Plaintiff of the dangers of Zyprexa when he prescribed it and that he failed to inform Plaintiff despite knowing of Plaintiff's family history of diabetes and the possibility that the drug could cause the disease. (Id.) The Complaint repeats the earlier allegation that Plaintiff did not have the conditions for which Zyprexa is approved, bipolar disorder or schizophrenia, and should not have been prescribed the drug. (Id.)

These allegations amount to no more than a claim of medical malpractice which, as stated earlier, does not support a claim under § 1983. An incorrect prescription does not rise to the level of misconduct necessary to state a claim for deliberate indifference even if the treatment decision is unreasonable. Kidd v. Correctional Med. Servs., No. 3:06-CV-334 RM, 2006 WL 1544393, at *2 (N.D. Ind. May 30, 2006) (unpublished) ("[The plaintiff] alleges that he was prescribed incorrect medicine which caused him harm and that it was not promptly corrected, but neither negligence nor medical malpractice state a claim under

§ 1983. . . . Though the treatment choices may have been unreasonable, these facts do not suggest that the defendants wanted harm to come to him or that they selected a course of treatment with the intent of causing him harm. . . . [The plaintiff] alleges that the defendants . . . did not pay close attention . . . and experimented with prescription drugs . . . . None of the facts support an allegation of deliberate indifference." (internal quotations omitted)). The Complaint should be dismissed as to Defendant Cunningham.

Defendants Dr. Bosholm, Mrs. Williams, Dr. Alan Rhoades

The next two Defendants named in the Complaint are Dr. Bosholm (Docket Entry 2 at 26) and Mrs. Williams (id. at 27), a physician and director of nursing employed by Defendant Wellpath. The Complaint alleges that both of these Defendants were aware that Plaintiff exhibited symptoms of diabetes, including frequent urination, unexplained weight loss, and blurry vision, but failed to properly examine him or provide treatment for several months. (Id. at 26-27.) It also adds that Defendant Bosholm delayed in treating Plaintiff's hepatitis C for over four months. (Id. at 26.) The Amended Complaint raises similar allegations as to Defendant Dr. Alan Rhoades, who it describes as a "regional doctor" with Defendant Wellpath, and adds further allegations regarding Defendant Rhoades's denial of Plaintiff's hepatitis treatment. (Docket Entry 3 at 4.) The allegations as to these three Defendants are sufficient at the screening stage to state a claim under § 1983 for deliberate indifference to a serious medical need under § 1983. As to that claim, and that claim only, the case can go forward as to these three Defendants. Any attempts at raising a claim based on medical malpractice or issues with the grievance procedure fail for the reasons stated

previously and should be dismissed. Finally, the Complaint and Amended Complaint make general and conclusory allegations that Defendants Bosholm and Williams "failed to correct systemic deficiencies" within Wellpath that resulted in "many inmate deaths." (Docket Entry 2 at 26-27.) Plaintiff cannot raise any claim on behalf of other inmates who may have been harmed.

Defendants Rocky Joyner, Mr. R.E. Slater, and Captain C. Warren

The next three Defendants named in the Complaint are Rocky Joyner (id. at 28), the Chief Deputy with the Forsyth County Sheriff's Department, B. Slater (id. at 29), a Major with that Department, and Captain C. Warren (id. at 30), also of that Department. As to all three of these Defendants, the Complaint alleges that they made unidentified medical judgments that they were not qualified to make, that they were aware of complaints regarding the medical staff's treatment of inmates, that they told Plaintiff during the handling of his grievances that he could not conclusively prove that Zyprexa caused his diabetes, and that they failed to correct systemic deficiencies in the medical treatment system at the Detention Center. (Id. at 28-30.) It also adds that Defendant Joyner denied Plaintiff's grievance as having no merit. (Id. at 28.)

As an initial matter, any alleged defects in the handling of Plaintiff's grievances fail for the reasons already discussed and should be dismissed. Plaintiff has no federal constitutional right to a grievance procedure or any particular result in that procedure.

Regarding the other allegations, they are entirely conclusory in that they fail to identify specific issues these Defendants failed to address or ignored as to Plaintiff or what

power they even had to effect changes. The only possible "medical judgment" listed is the denial of Plaintiff's grievance, which does not state any claim for relief. Conclusory allegations of deliberate indifference are insufficient to state a claim for relief under § 1983. Abbott v. Yurcina, No. 1:12cv176, 2013 WL 4806223, at *12 (N.D.W. Va. Aug. 7, 2013) (unpublished), report and rec. adopted in pertinent part, 2013 WL 4806391 (N.D.W. Va. Sept. 9, 2013) (unpublished). Further, jail officials are entitled to rely on medical professionals to handle medical treatment. Harris v. Poole, 1:18CV378, 2020 WL 531954, at *13-14 (M.D.N.C. Feb. 3, 2020) (unpublished), rec. adopted, slip op. (M.D.N.C. Mar. 30, 2020) (unpublished). There is no allegation that these Defendants knew that Plaintiff was receiving inadequate medical treatment prior to him receiving it. The Complaint states no viable claim against these three Defendants and Plaintiff's claims against them should be dismissed.

Forsyth County Sheriff's Department

The ninth Defendant listed in the Complaint is the Forsyth County Sheriff's Department. (Docket Entry 2 at 31.) The Complaint alleges that the Department's policies prevented Plaintiff from receiving treatment from his personal outside provider and instead forced him to seek treatment from Defendant Cunningham, who prescribed Zyprexa, thereby causing Plaintiff to develop diabetes. (Id.) The Complaint alleges that the Department is aware of general problems with medical treatment in the Detention Center, but did not improve it. (Id.) Finally, the Complaint states that the Department "enforced policies which

has [sic] overridden many medical calls" and left Plaintiff subject to a lack of needed medical care. (Id.)

For the most part, the allegations against the Forsyth County Sheriff's Department are further conclusory allegations of unconstitutional policies or customs or deliberate indifference which fail to state any claim for relief under Revene and Abbott as discussed with previous Defendants. Also, as previously noted, jail officials are generally allowed to rely on the treatment decisions of medical personnel. As for Plaintiff's contention he could not see his own outside doctors, "[the plaintiff] is simply not entitled to doctors of his own choosing." Smith v. Haynes, No. 3:05cv130, 2006 WL 3751302, at *7 (N.D.W. Va. Dec. 15, 2006) (unpublished). "'[S]ociety does not expect that prisoners will have unqualified access to health care' or to the medical treatment of their choosing." Lewis v. Lappin, Nos. 3:10CV130, 3:10CV568, 3:10CV684, 2011 WL 4961504, at *3 (E.D. Va. Aug. 8, 2011) (unpublished) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)), report and rec. adopted, 2011 WL 4961366 (E.D. Va. Oct. 18, 2011) (unpublished), aff'd, 466 F. App'x 211 (4th Cir. 2012). Therefore, Plaintiff's allegation that he could not see the doctors he wished to see does not state a claim for relief under § 1983. His claims against Defendant Forsyth County Sheriff's Department should be dismissed.

Forsyth County Council

The tenth, and last, Defendant listed in the Complaint is the Forsyth County Council. (Docket Entry 2 at 32.) As to this Defendant, the Complaint claims that the Council was aware of generally poor medical treatment at the Detention Center and did not provide funds

for a remedy. (Id.) As an initial matter, the Court takes notice that there is no such entity, but that Plaintiff likely intends to name the Forsyth County Board of Commissioners as a Defendant. If so, such a claim still fails because a county board of commissioners in North Carolina is not a legal entity capable of being sued. Gunter v. Southern Health Partners, Inc., No. 1:16CV262, 2017 WL 1082433, at *1-2 (M.D.N.C. Mar. 22, 2017) (unpublished). Instead, Forsyth County, rather than its board of commissioners, may sue or be sued. See id. However, any claim against Forsyth County regarding medical treatment at the Forsyth County Detention Center would be futile because the sheriff of a county, not a county or its board of commissioners, is responsible for final policymaking authority regarding county jails. Cobbs ex rel. Cobbs v. County of Guilford, No. 1:10CV806, 2012 WL 3113141, at *2 (M.D.N.C. July 31, 2012) (unpublished), rec. adopted as modified, 2012 WL 4508106, (M.D.N.C. Sept. 28, 2012) (unpublished). Accordingly, Forsyth County cannot be held liable for the Sheriff's actions at the Detention Center. Id. Plaintiff's claims against Defendant Forsyth County Council (its Board of Commissioners or the County itself) fail and should be dismissed.

Defendant HIG Capital Equity Firm

The Amended Complaint also names as a Defendant HIG Capital Equity Firm, which the Amended Complaint describes as an "[e]mployer for for-profit contractors" and as owning or exerting control over Defendant Wellpath. (Docket Entry 3 at 3.) The Amended Complaint alleges that Defendant HIG Capital was responsible for the unidentified policies which Plaintiff believes resulted in his inadequate medical treatment. (Id.) The Amended

Complaint also seeks to hold Defendant HIG Capital liable based on its alleged employment of other Defendants who provided that treatment. (Id.)

Plaintiff's claims against Defendant HIG Capital fail for essentially the same reasons as his claims against Defendant Wellpath fail. There is no medical malpractice claim under § 1983, see Estelle, supra, the Amended Complaint does not provide the required certification for a state law medical malpractice claim, see Parker, supra, the Amended Complaint must sufficiently allege a policy or custom that led to a violation of Plaintiff's federal rights, see, id., and the Amended Complaint contains only conclusory and insufficient allegations of such a policy or custom, see Revene, supra. As for any claim based on Defendant HIG Capital's alleged employment of other Defendants, theories of *respondeat superior* or liability predicated solely on a defendant's identity as a supervisor do not exist under § 1983. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). All of the claims raised as to Defendant HIG Capital fail and should be dismissed.

Defendant Bobby Kimbrough

The final Defendant named in the Amended Complaint is Forsyth County Sheriff Bobby Kimbrough. (Docket Entry 3 at 5.) The Amended Complaint contends that Defendant Kimbrough enforced security policies that resulted in inadequate medical treatment for Plaintiff by forcing him to see Defendant Wellpath's doctors, rather than the doctors of his choosing. (Id.) The Amended Complaint also claims that Defendant Kimbrough knew of overall deficiencies in the medical treatment offered to inmates at the detention center, but did not remedy them, as well as and that he did not "enforce the

inmates['] right to consent" to medical treatment by seeing that physicians warned inmates of the risks and dangers of treatments. (Id.)

The Amended Complaint, as with some of the other Defendants, only makes insufficient and conclusory allegations regarding policies and deliberate indifference by Defendant Kimbrough. As discussed previously, these claims fail as a matter of law and should be dismissed. Likewise, for the reasons set out above, the claims that Defendant Kimbrough did not properly supervise the physicians at the detention center and their advice to inmates fall short, because he was entitled to rely upon the medical professionals to perform their duties. Finally, as previously noted, no claim can rest on a theory of *respondeat superior*. All claims against Defendant Kimbrough should be dismissed.

Conclusion

For the reasons set out above, the Complaint and Amended Complaint fail to state claims for relief against most of the Defendants listed. The only exceptions are the claims based on allegations of deliberate indifference related to Plaintiff's medical treatment by Defendants Bosholm, Williams, and Rhoades. All of the other claims should be dismissed at this time under the terms set out above as to each Defendant.

Finally, regarding Plaintiff's request to proceed *in forma pauperis*, § 1915(b)(1) requires that he make an initial payment of $8.53. Further payments will be deducted from Plaintiff's prisoner account as funds become available. Failure to comply with this Order will lead to dismissal of this action.

IT IS THEREFORE ORDERED that *in forma pauperis* status be granted for the sole purpose of entering this Order and Recommendation.

IT IS FURTHER ORDERED that within twenty (20) days from the date of this Order Plaintiff make an initial filing fee payment of $8.53.

IT IS FURTHER ORDERED that Plaintiff's trust officer shall be directed to pay to the Clerk of this Court 20% of all deposits to his account starting with the month of June of 2020, and thereafter each time that the amount in the account exceeds $10.00 until the $350.00 filing fee has been paid.

IT IS RECOMMENDED that this action be dismissed pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted as to all claims except the claims based on allegations of deliberate indifference related to Plaintiff's medical treatment by Defendants Bosholm, Williams, and Rhoades. The dismissal of Plaintiff's medical malpractice claims should be without prejudice, as should Plaintiff's claims of deliberate indifference against Defendants WellPath and HIG Capital based on their policies, and his product liability claim against Defendant Eli Lilly.

This, the 29th day of May, 2020.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**